J-A30007-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| REAFEAL FIELDS | |
| Appellant | No. 1522 EDA 2013 |

Appeal from the Judgment of Sentence February 6, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014201-2010

BEFORE:  LAZARUS, J., MUNDY, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED FEBRUARY 06, 2015**

Reafeal Fields appeals from his judgment of sentence imposed in the Court of Common Pleas of Philadelphia County after a jury convicted him of first-degree murder,[1] criminal conspiracy[2] and possessing an instrument of crime[3] ("PIC").  Upon careful review, we affirm.

The trial court set forth the facts of this matter as follows:

> Timothy Johnson ("Johnson") arrived at the Ridge Food Market at 2632 Ridge Avenue at 10:43 AM on February 11, 2010.  When he arrived he saw two men, whom he knew as June and Shiz, on the corner.  Johnson started walking down the street toward 26th

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(a).

[2] 18 Pa.C.S.A. § 903.

[3] 18 Pa.C.S.A. § 907(a).

Street and then heard about three gunshots. He turned around and saw [Michael Smith ("Decedent")], a friend of his, lying on the ground and June and Shiz running away. Johnson identified June and Shiz as [co-defendant Kelvin] Bryant and [Fields], respectively.

Philadelphia Police Officer Patrick Gereaghty ("Officer Gereaghty") arrived first at the scene, where he found the decedent face-down in the snow and unresponsive. Officer Gereaghty transported him to Temple University Hospital where he was pronounced dead at 2:31 PM.

Both [Fields] and Bryant later told Amin Payne ("Payne") that they had killed the decedent. Bryant and [Fields] told Payne that after they had spoken with Johnson outside the store, they had killed the decedent over drug territory: "They did not want him selling drugs on Bailey Street." [Fields] and Bryant told Payne that Bryant had used his 9mm and that [Fields] had used a .38 caliber revolver.

Later that evening, Bryant and [co-defendant Milique] Wagner were inside Bryant's mother's apartment with Payne and Herman Adams ("Adams"), where they were heat-sealing bags of drugs. Bryant received a phone call, and he and Wagner went outside. A short time later, Payne looked out the window and, not seeing Bryant and Wagner, went outside and looked down the street. He saw Bryant and Wagner at the corner of 25th Street and Cecil B. Moore Avenue speaking with [Braheem] King and then saw them "just pull out on the boy and shoot him up." The two then ran down the street and turned up 26th Street. Adams testified at trial that he heard the gunshots about ten minutes after Bryant and Wagner had left the apartment. Bryant called Payne thirty minutes later and told him, "I had to holler at [i.e., kill[4]] another one." A few days later, Bryant told Payne, "I killed the one, I might as well get the rest. I got to get them out of the way."

At the scene [of the King murder], police recovered a sandwich bag containing four smaller ziplock bags, each containing a

_____

[4] Amir Payne, a key witness for the prosecution, testified that Bryant's statement that he "had to holler at another one" meant that he "killed another boy." N.T. Trial, 2/1/13, at 213.

green, leafy substance, and two heat-sealed bags containing an off-white, chunky substance.  Police Officer Flade testified that, in his experience, the substances appeared to be marijuana and crack cocaine.  Twenty-seven cartridge casings were also found, all fired from one of two 9mm semi-automatic handguns.

All three defendants left Philadelphia after February 11, 2010 and were [subsequently] arrested outside the county.

Trial Court Opinion, 11/14/13, at 2-3 (internal citations to the record and footnotes omitted).

Prior to trial, the Commonwealth filed a motion to consolidate the bills of information against Bryant, Fields and Wagner for trial, and Fields filed a motion to sever.  The court granted the Commonwealth's motion and denied that filed by Fields.  As a result, Fields was tried jointly with Bryant and Wagner.

On February 6, 2013, a jury found Fields guilty of the above crimes and, on that same date, the court sentenced him to a mandatory term[5] of life imprisonment for the charge of murder in the first degree.[6]  Post-sentence motions were denied by order dated May 21, 2013 and this timely appeal follows, in which Fields claims that the trial court abused its discretion in granting the Commonwealth's motion for joinder and denying his motion for severance.

---

[5] 18 Pa.C.S.A. § 1102(a)(1).

[6] The court also sentenced Fields to concurrent terms of five to ten years for conspiracy and one to five years for PIC.

Pennsylvania Rule of Criminal Procedure 582 governs the joinder of defendants and provides that "[d]efendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Pa.R.Crim.P. 582(A)(2). Rule 583 addresses severance and provides that separate trials of defendants may be ordered if it appears that any party may be prejudiced by defendants being tried together. Pa.R.Crim.P. 583. The prejudice alleged must be such as would occur if the evidence tended to convict the defendant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. *Commonwealth v. Lauro*, 819 A.2d 100, 107 (Pa. Super. 2003) (citation omitted).

> Joinder and severance of separate indictments for trial is a discretionary function of the trial court; consequently, the trial court's decision is subject to review for abuse of that discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. Consequently, an abuse of discretion consists not merely of errors in judgment by the trial court, but instead contemplates action unsupported by the evidence, at odds with governing law, or arising from improper motives personal to the judge. The critical consideration is whether the appellant was prejudiced by the trial court's decision. The appellant bears the burden of establishing such prejudice.

*Commonwealth v. Brookins*, 10 A.3d 1251, 1255 (Pa. Super. 2010) (internal citations and punctuation omitted).

- 4 -

When criminal conspiracy is charged, it is well-established that the law favors a joint trial. ***Commonwealth v. Serrano***, 61 A.3d 279, 285 (Pa. Super. 2013).

> A joint trial of co-defendants in an alleged conspiracy is preferred not only in this Commonwealth, but throughout the United States.
>
> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability.
>
> A defendant requesting a separate trial must show real potential for prejudice rather than mere speculation. The defendant bears the burden of proof, and we will only reverse a decision not to sever if we find a manifest abuse of discretion by the trial court.

***Id.***, quoting ***Commonwealth v. Colon***, 846 A.2d 747, 753-54 (Pa. Super. 2004) (citations omitted).

To determine whether a defendant has been prejudiced by a joint trial, we consider the following factors:

> (1) Whether the number of defendants or the complexity of the evidence as to the several defendants is such that the trier of fact probably will be unable to distinguish the evidence and apply the law intelligently as to the charges against each defendant; (2) Whether evidence not admissible against all the defendants probably will be considered against a defendant notwithstanding admonitory instructions; and (3) Whether there are antagonistic defenses.

*Commonwealth v. Brookins*, 10 A.3d 1251, 1256 (Pa. Super. 2010) (citation omitted).

Here, Fields argues that the evidence linking the shootings of Smith and King was minimal and that the alleged common co-conspirator, Bryant, did not have a plan to kill others at the time Smith was killed. Fields also claims that application of the second *Brookins* factor demonstrates that he was prejudiced by the joint trial because "evidence of the attempt to eliminate a witness in the murder for which [he] was not charged was unduly prejudicial" to Fields. Brief of Appellant, at 12. He argues that *Brookins* is factually on point and should be controlling here.

Fields' reliance on *Brookins* is misplaced. There, Brookins and an individual named McKeiver were charged with conspiring to sell drugs. Brookins' involvement with McKeiver was documented through wiretaps on McKeiver's phone, which recorded Brookins asking McKeiver to sell her cocaine for resale and arranging for the drug's delivery. Two additional co-defendants were charged with drug conspiracy as well as with a plan to rob and kidnap another drug dealer. Brookins was not charged in relation to the robbery or kidnap offenses and sought to sever her trial from those defendants on the basis that the evidence related to the robbery and kidnapping charges would not be admissible if she were tried separately and that the evidence caused her undue prejudice.

In reversing the trial court and remanding for a new trial, this Court concluded that there was no evidence that Brookins participated in or had

knowledge of the robbery and kidnapping offenses and, as such, any evidence related to those crimes would be inadmissible in a separate trial. The Court found that the robbery and kidnapping were "discrete criminal transaction[s], independent of Brookins's acts[.]" *Id.* at 1257. Accordingly, the Court concluded that the evidence would not be admissible as "other crimes" evidence under Pa.R.E. 404, which renders evidence of other crimes admissible to show:

> (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) the identity of the person charged with the commission of the crime on trial.

*Id.*, quoting *Commonwealth v. Dozzo*, 991 A.2d 898, 903 (Pa. Super. 2010).

Whereas the crimes in *Brookins* were unrelated, here, the two murders were tied together by a common motive, i.e., the elimination of drug rivals. The shootings occurred close in both time and location and involved an overlapping actor, Bryant, the protection of whose drug turf provided the motive. Moreover, evidence of each shooting would have been admissible as to the other pursuant to Rule 404 in order to show either motive or common scheme.[7] Finally, the facts of the two shootings were not

---

[7] Amir Payne told police that Bryant told him "I killed the one [i.e., Smith]. I might as well get the rest. I got to get them out of the way." N.T. Trial, 2/1/13, at 214. The Commonwealth presented this as evidence of motive
*(Footnote Continued Next Page)*

complicated[8] and the jury was capable of distinguishing the evidence as it related to the three defendants. Indeed, the jury was clearly instructed[9] by the trial court to

> evaluate the evidence offered by the Commonwealth as to each individually. You will then determine whether the evidence taken as a whole as to each defendant individually has proved to you beyond reasonable doubt each element of each offense charged against that defendant.

N.T. Trial, 2/6/13, at 46-47. The law presumes that the jury will follow the instructions of the court. *Commonwealth v. Sandusky*, 77 A.3d 663, 671 n.2 (Pa. Super. 2013) (citation omitted).

For the foregoing reasons, the trial court did not abuse its discretion by refusing to sever Fields' prosecution from that of his co-defendants.

*(Footnote Continued)* _____

and common scheme for both shootings. Fields, however, argues that this statement suggests that, at the time Smith was killed, Bryant had not developed a plan to eliminate the other dealers. Thus, Fields claims, there is really no evidence of a common plan or scheme linking the two shootings. While this interpretation may be one way of interpreting Payne's statement, it is also possible to interpret it to demonstrate Bryant's motive for committing both murders, i.e. "I got to get them out of the way."

[8] We also note that the Commonwealth presented the statement of eyewitness Timothy Johnson, who told police he had seen Bryant and Fields at the scene of the crime just prior to the shooting, and then witnessed them flee from the scene immediately after shots were fired.

[9] To the extent Fields bases his claim on the trial court's failure to specifically instruct the jury not to consider evidence of witness intimidation in the King murder against Fields, this claim is waived for failure to object at trial. When asked by the trial court whether there were any objections or corrections to the court's jury charge, Fields' counsel answered in the negative. N.T. Trial, 2/6/13, at 68.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/6/2015